Thomas A. McGovern and Frances H. McGovern v. Commissioner.
McGovern v. Commissioner
Docket No. 47084.
United States Tax Court
T.C. Memo 1955-1; 1955 Tax Ct. Memo LEXIS 338; 14 T.C.M. (CCH) 1; T.C.M. (RIA) 55001; January 7, 1955
*338 1949 - Petitioners failed to file return. Failure was due to fraud with intent to avoid tax. Fraud and delinquency penalties imposed. 1950 - Petitioners failed to file a timely return. Delinquency penalty imposed. George R. Sherriff, Esq., 42 Broadway, New York, N. Y., for the petitioners. Donald J. Fortman, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion
*339 This proceeding is for a redetermination of deficiencies in income tax and penalties of the petitioners as follows: Sec. 293(b)
Sec. 291(a)
Year
Tax
Deficiency
Penalty
Penalty
1948
Income
$126.32
1949
Income
643.14
$321.57
$160.79
1950
Income
1.24
.62
144.81
The deficiency for the year 1948 results from the disallowance of itemized deductions claimed by the petitioners on their 1948 joint Federal income tax return. At the hearing, counsel for the petitioners conceded the correctness of the respondent's determination of the deficiency and this year is no longer in controversy. The deficiency and penalties for the year 1949 result from the respondent's determination that no return was filed by the petitioners although the petitioner Thomas A. McGovern had, during the year 1949, gross income of $6,304.81 and net income of $5,674.33. At the hearing, counsel for petitioners conceded the correctness of the respondent's determination of a deficiency for the year 1949. Issue was raised by the pleadings and at the hearing as to the imposition of penalties under section 293(b) and section 291(a) and also as to the amount of the penalties. *340 The deficiency and penalties for the year 1950 result from the respondent's determination that there was an error in the mathematical computation of the tax and that the petitioners did not file a timely return. Petitioners conceded the deficiency determined by the respondent. The only issue remaining concerning this year is with respect to the penalty under section 291(a). Findings of Fact The petitioners, Thomas A. McGovern and Frances H. McGovern, are husband and wife, residing at 28 Connell Place, Bronx 61, New York. Petitioners filed joint income tax returns for the calendar years 1948 and 1950 with the collector of internal revenue for the second district of New York. 1949 Return The petitioner, Thomas A. McGovern, received a salary of $6,304.81 as an employee of the United States Treasury Department for the calendar year 1949. This was the sole source of petitioners' income in 1949. Their net taxable income was $5,674.33 on which their tax, after allowance for three exemptions, is $643.14. Withholdings from McGovern's salary in 1949 amounted to $528.30. Petitioner was employed with the collector of internal revenue, Customhouse, Second District, New York, N. Y. *341 , for a period of approximately 18 years. He was employed in various capacities, ultimately becoming chief of the cashier division in July 1950 and remaining in that position until he left the Internal Revenue Service in April 1952. His duties involved the handling and processing of income tax returns. William J. Brennan, assistant chief of the returns coordinating unit, Internal Revenue Service, Customhouse (Second N. Y. District) has been employed by the Internal Revenue Service for a period of six years. It was part of his usual duties to receive requests for information concerning returns and to make searches to determine whether a return was filed for a given year. Brennan received a request during January 1954 to conduct a search to determine whether Thomas A. and Frances H. McGovern had filed a Federal income tax return for the calendar year 1949. He made a thorough search of the collector's records to determine whether a return had been filed with the collector of internal revenue for the second district of New York. His search involved the following particulars: (a) Search of the I.B.M. card index files, which are the regular alphabetical card files for returns, for the *342 year 1949 filed in 1950. Search was not confined only to the name "McGovern" or to the initials "T. A." and "F. H."; the search was made also under various probable spellings of the surname and various initial combinations. In cases of similarity in name and initials, the returns were individually checked. The cards were also checked for similarity in address to that of 28 Connell Place, New York, New York. (b) Search was also made of indices of supplemental lists of returns in the same manner indicated above. The I.B.M. index file, the card file, and the supplemental lists constituted the entire record system but, on the possibility that there might have been a delay in filing, Brennan checked the 7809-c cards in the refund section. When a refund is made, a separate card is made in this section. On the possibility that the return had been delayed in processing, the index cards for the next two years were checked. This search produced no record of the petitioners' return for the year 1949. Brennen caused a search to be made also for a record of any is as follows: (a) The returns processing branch receives the returns on which refunds are indicated. (b) The returns are checked *343 and if the refund is correct, the amount is circled in green. (c) The returns on which refunds are indicated are grouped or "blocked" in bundles of 100 returns. (d) Each block of 100 returns is placed in an envelope with initials LM (Lower Manhattan). (e) Each envelope containing a block is sent to the listing section where an index card is made. This is the index card referred to in the previous search of the I.B.M. and related card file systems. (f) A schedule is made with 100 names and addresses from the face of the 100 returns indicating a refund. (g) The schedule is sent to the refund section which makes a certification form for transmittal with a copy of the schedule to the disbursing office. (h) The disbursing office issues the refund checks from the names indicated on the schedules. (i) After issuing the checks, the schedule, certified as paid, is returned to the collector's office and the schedules pertaining to all refunds are bound in book form. In order for a taxpayer to receive a refund check in the second district, his name must appear on a refund schedule sent to the disbursing office. Brennan obtained from the blocking book the list of all of the books *344 containing refund schedules listing refunds to taxpayers for the calendar year 1949 where a Form #1040 was filed. This listed all refund schedules for returns where the taxpayer was entitled to a refund with the one exception of those listed on 7809-c schedules; 7809-c schedules are for returns that are filed late. The 7809-c cards were checked but there was no record of a Thomas A. and Frances H. McGovern, 28 Connell Place, New York 61, New York. Brennan obtained about 25 books of refund schedules from the blocking book. These books covered all the refund schedules on the returns timely filed for the year 1949, Form #1040. These books were examined under Brennan's supervision for the purpose of locating a reference to any claim for refund in the name of Thomas A. or Frances H. McGovern or for the initials "T. A." or "F. H." McGovern or the names or initials reversed, or an address of 28 Connell Place, New York 61, New York, and for a refund in the amount of approximately $30.20. A period of two weeks was devoted to this search. No refund schedule listing petitioners' names for 1949 was found. Petitioners did not file an income tax return for the calendar year 1949. It was part *345 of petitioner McGovern's regular duties to be familiar with income tax returns and the requirements for filing a return. His failure to file a return for the year 1949 was willful and due to fraud with intent to evade the tax, and part of the deficiency for 1949 is due to fraud with intent to evade payment of income taxes. 1950 Return The petitioners' 1950 income tax return has the following stamp on its face: "Rec'd with Remittance, 12 Mar. 15, 1951, Coll. Int. Rev., 2nd Dist. N. Y." In his official capacity as cashier, petitioner McGovern frequently stamped returns with a "Received" stamp. McGovern stamped his own 1950 return. Petitioners' return showed total tax liability of $722.80 and a balance due on their tax of $102.40, after withholdings of $620.40. The balance was paid by the following American Express money orders attached to the return: Money Order
No.
Amount
Date
BZ1659754 $50.
3/14/51
BZ1659755
50.
3/14/51
BZ1659756
2.40
3/14/51
Each of the foregoing checks showed the Collector of Internal Revenue as payee, Thomas and Frances McGovern as remitters and John Gonzalez as agent of the American Express Company. Petitioners' correct *346 tax liability for 1950 is $724.04. The difference between this amount and that shown on petitioners' return results from a mathematical error in computing the tax. The resulting deficiency of $1.24 is conceded by petitioners. Petitioners' return also bears the following stamp on its face: "Deposited in Federal Reserve Bank, July 2, 1951, Collector of Int. Rev., 2nd Dist. N. Y." The above money orders for the balance due on petitioners' 1950 income tax were cleared through the Federal Reserve Bank of New York on July 3, 1951. McGovern in his capacity as cashier for the Second District was in charge of depositing checks and money orders in the Federal Reserve Bank. Richard T. Casserly is the divisional assistant and custodian of financial papers for the American Express Company. In this capacity he has charge of the distribution of all money orders issued by that company at its New York office at 65 Broadway to sub-agents of the company. He kept records to cover shipments of imprinted money orders from the printers in Chicago to the company's New York office at 65 Broadway. Casserly's records show that money orders with serial numbers ranging from BZ1658500 to BZ1678499 were *347 received from Chicago in his New York office on May 28, 1951. The three money orders used to pay the balance owed on McGovern's 1950 income tax were in this group. Casserly also kept records which indicated when and to which agent of the company the money orders were distributed for sale. His records show that on June 7, 1951, money orders with serial numbers ranging from BZ1659000 to BZ1659999 were taken from the company's vault for distribution to agents. The three money orders used to pay the balance owed on McGovern's 1950 income tax were in this group. John Gonzalez, in 1951, was an agent of the American Express Company for the sale of money orders. He was a friend of McGovern for many years. He kept records of the money orders which he sold. His report, dated July 9, 1951, covered his sales of the preceding two weeks. Money orders with the serial numbers of those which were used to pay the balance of the tax due on McGovern's 1950 income taxes were listed on Gonzalez' July 9, 1951 report. The money orders used to pay the balance due on McGovern's 1950 income taxes were purchased in the two weeks preceding July 9, 1951. These money orders were attached to McGovern's return *348 when it was filed. McGovern's 1950 income tax return was filed more than three months late. Opinion ARUNDELL, Judge: There are three years before us. Petitioners have conceded the deficiencies determined for each of the years and contest only the penalties for 1949 and 1950. For 1949, the respondent asks for the fraud and the delinquency penalty for failure to file a return. There is also a question, assuming that penalties are to be imposed, of the amount of the penalties. For 1950, the respondent now presses only the delinquency penalty for the failure of petitioners to file their return on time. 1949 Petitioners, husband and wife, claim that they filed a return for 1949. However, no record of the petitioners' return for 1949 was found after a through search in the office of the collector for the second district of New York where the return was allegedly filed and where petitioner, McGovern, was employed. Petitioners, in support of their contention that they filed a return for the year 1949, introduced the draft of their so-called retained copy of such return. Petitioner testified that moreover he was refunded $30.20 covering an overpayment of their tax for that year. *349 An examination of this paper shows on its face that the tax even as petitioner computed it was greater than the tax withheld at the source and that petitioner owed the Government $30.20 rather than having overpaid his tax in this sum. His testimony of having received the refund was either a complete fabrication or his memory was faulty and is not dependable. On the record before us, we have no hesitancy in finding that petitioners did not file an income tax return for 1949. It follows that a penalty of 25 per cent of the tax liability, less the tax withheld at the source on petitioner's wages, should be imposed. The respondent also asks that the fraud penalty be added for 1949. The respondent's case for the penalty is based on showing that the petitioner-husband had taxable income for 1949 and, because of his position in and long association with the Internal Revenue Service, he unquestionably was familiar with his obligation to file a return for that year. His failure to file, the respondent concludes, was prompted by a fraudulent intent to evade taxation. We think that the respondent has proved his case in respect of the fraud penalty. With the background we have here, we think *350 that the only explanation for petitioners' failure to file a return was due to fraud with intent to evade the tax on their income. Therefore, we hold that at least part of the deficiency in 1949 was due to fraud. There is a question as to the amount of the penalty. Petitioners claim that a substantial portion of the tax was withheld from McGovern's wages during 1949 and that, if the fraud penalty is attached, it should be measured by 50 per cent of the difference between the amount withheld and the total tax due. The respondent argues that the fraud penalty is measured by 50 per cent of the "deficiency" and that, according to the statute, the deficiency is determined without respect to the amount withheld. We observed in Paul Irvin Redcay, 12 T.C. 806, 809, that: "'Deficiency' is defined in subsection (a)(1) of section 271 of the Internal Revenue Code [of 1939] to be the excess of the tax imposed over the amount shown as the tax by the taxpayer on his return, and subsection (b)(1) of the same section provides that the tax imposed and the tax shown on the return shall both be determined without regard to the credit for tax withheld under section 35." Applying *351 the foregoing to the facts of this case, the correct tax imposed for the year 1949 was $643.14. No return was filed and, therefore, the "deficiency" within the meaning of the statute is the difference between zero and $643.14, or the full amount of the tax imposed undiminished by the amount of the withholdings from petitioner's salary. The fraud penalty is, therefore, measured by 50 per cent of $643.14. 1950 The facts concerning 1950 are rather extraordinary. Admitted in evidence is petitioners' return with a stamp on its face indicating it was filed on the date due, March 15, 1951. The evidence also shows that the balance due on the tax was paid on the due date with American Express money orders. There is a small deficiency, resulting from a mathematical error, that is not disputed. The respondent, however, claims a penalty because the return was not timely filed. For proof of this, the respondent showed that the particular American Express money orders with which petitioner paid the balance of his tax in 1951 were not available in New York until the end of May 1951, and did not leave possession of the issuing company until the end of the first week in June 1951, and were *352 reported sold by John Gonzalez, petitioners' friend, during the last week of June or the first week of July 1951. The inference from all this is that the petitioner, in his capacity as cashier with access to stamps in the collector's office, back-dated his return some time around the end of June 1951, and filed it surreptitiously among other unprocessed returns in the collector's office. The petitioner's answer to this is simply to claim that the return was filed on March 15, 1951, as stamped on its face. He does admit, however, that the money orders were attached to the return at the time it was stamped. We think it is clear that the money orders could not have been sold to McGovern before June 7, 1951. Up to that date, they were still in the possession of the American Express Company. From the fact that the money orders were listed in Gonzalez' report of July 9 covering sales of the preceding two weeks, we think it is clearly shown that they were not sold to McGovern until some time around the end of June 1951 - more than three months after the return should have been filed on March 15, 1951. We hold, therefore, that the petitioners' return was filed more than three months late *353 and that a delinquency penalty of 20 per cent was appropriately claimed by the respondent. This penalty, however, must be measured by petitioners' tax liability, less the amount of tax withheld at the source on petitioner's wages. In other words, as in the case of the delinquency penalty for 1949, credit should be allowed the petitioners for taxes withheld before applying the delinquency penalty for 1950. Decision will be entered under Rule 50.